UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL T. HAYES,<br><br>                    Plaintiff,<br><br>        v.<br><br>IDOC; RONA SIEGERT; CPL.<br>GARCIA; CENTURION<br>MEDICAL; MICHAEL GRACE;<br>TONJA REIDY; and JANE AND<br>JOHN DOE NURSES 1-6,<br><br>                    Defendants. | Case No. 1:22-cv-00184-BLW<br><br>**INITIAL REVIEW ORDER BY**<br>**SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff's Complaint as a result of

Plaintiff's status as an inmate. The Court now reviews the Complaint to determine

whether it or any of the claims contained therein should be summarily dismissed

under 28 U.S.C. § 1915A. Having reviewed the record, and otherwise being fully

informed, the Court enters the following Order.

## REVIEW OF COMPLAINT

### 1.    Pleading Standards and Screening Requirement

A complaint must contain "a short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under modern

pleading standards, Rule 8 requires a complaint to "contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal/Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted).

If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted). Bare allegations that amount to a mere restatement of the elements of a cause of action, without adequate factual support, are not enough.

The Prison Litigation Reform Act ("PLRA")[1] requires that the Court review complaints filed by prisoners seeking relief against a governmental entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A. The

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

INITIAL REVIEW ORDER BY SCREENING JUDGE - 2

Court must dismiss any claims that do not have adequate factual support or are frivolous or malicious. *Id.*

The Court also must dismiss claims that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. *Id.* These last two categories—together with claims that fall outside a federal court's narrow grant of jurisdiction—encompass those claims that might, or might not, have factual support but nevertheless are barred by a well-established legal rule.

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (stating that Rule 12(b)(6) authority to dismiss claims was expanded by the PLRA, giving courts power to dismiss deficient claims, sua sponte, before or after opportunity to amend).

**2.      Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction. Plaintiff contends that he has been denied adequate prison medical treatment with respect to his prescription medication.

Plaintiff alleges that, from October 13, 2021, to March 31, 2022, his prescription medication has run out, and has not been timely refilled, eight separate times. *Compl*., Dkt. 1, at 10. As a result, even though Plaintiff had submitted timely requests for refills, he was forced to go without his prescription medication for a total of 66 days.

Plaintiff also alleges that, on 198 different occasions, he asked to be "single dosed" when nurses came by his cell with the pill cart. "Single dosing" appears to occur when an inmate's regular prescription medication has not been timely refilled, but the pill cart has that medication available so that the nurse dispenses a single dose to the inmate, presumably as a stop-gap measure while the inmate's prescription is refilled. *See id*. at 10–11. On each of these 198 occasions, the pill cart nurse refused to do so.

Plaintiff informed Defendant Siegert—who appears to supervise the provision of medical care for the IDOC in that she monitors the contract between the IDOC and Centurion—several times about these problems by filing grievances. Siegert responded to at least one of these grievances and acknowledged the

problem, stating that she had addressed the issue. *Id*. at 13. However, Defendant Siegert did not take any further action after the problem kept happening, even though Plaintiff continued to inform her about it.

Plaintiff asserts that, on March 4, 2022, Plaintiff was supposed to have a sick call appointment. However, Defendant Garcia, who was charged with taking Plaintiff to that appointment, refused to do so. *Id*. at 15. Garcia then falsely told medical personnel that Plaintiff had refused to go to the appointment. *Id*. at 16. Garcia allegedly told another staff member that Plaintiff "did not need to see medical" and that Plaintiff "has cost this state enough money." *Id*.

Plaintiff names the following defendants: (1) the IDOC; (2) IDOC employees Corporal Garcia and Rona Siegert; (3) Centurion, the private entity providing Idaho inmates with medical care under contract with the IDOC; (4) Centurion employees Michael Grace and Tonja Reidy; and (5) six "John and Jane Doe" defendants.

## 3.   Discussion

### A.   *Standards of Law*

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute.[2] To state a plausible civil rights claim, a plaintiff must allege a violation of rights

---

[2] Plaintiff also references 18 U.S.C. §§ 241 and 242, which provide for criminal liability for certain deprivations of civil rights. *See Compl*. at 12. However, these federal criminal statutes do

protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Prison officials and prison medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional

---

not give rise to civil liability. *Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006).

injury"; (2) knowingly failed to act or acted improperly "in the training,

supervision, or control of his subordinates"; (3) acquiesced in the constitutional

deprivation; or (4) engaged in "conduct that showed a reckless or callous

indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks

omitted).

Administrative or supervisory defendants who were involved in reviewing

claims in an administrative grievance process might or might not be liable for the

constitutional violations complained of in those grievances, depending upon (1) the

type and timing of problem complained of, and (2) the role of the defendant in the

process. For example, an appeals coordinator cannot cause or contribute to a

completed constitutional violation, which occurred in the past and which is not

remediable by any action the reviewer might take. *See, e.g., George v. Smith*, 507

F.3d 605, 609–610 (7th Cir. 2007) ("A guard who stands and watches while

another guard beats a prisoner violates the Constitution; a guard who rejects an

administrative complaint about a completed act of misconduct does not."). A

defendant whose only role in a completed constitutional violation involved the

denial of a grievance "cannot be liable under § 1983." *Shehee v. Luttrell*, 199 F.3d

295, 300 (6th Cir. 1999).

If, however, the administrative or supervisory defendant "knew of an

ongoing constitutional violation and … had the authority and opportunity to

prevent the ongoing violation," yet failed to act to remedy the violation, then the defendant may be held liable under § 1983. *Herrera v. Hall*, 2010 WL 2791586 at *4 (E.D. Cal. July 14, 2010) (unpublished) (citing *Taylor*, 880 F.2d at 1045), *report and recomm'n adopted*, 2010 WL 3430412 (E.D. Cal. Aug. 30, 2010). Where claims are asserted against persons who supervise the provision of prison medical care, the question is not whether the supervisor was "directly involved" in the plaintiff's treatment. *Gonzalez v. Ahmed*, 67 F. Supp. 3d 1145, 1156 (N.D. Cal. 2014). Instead, the question is whether the Complaint plausibly alleges that the supervisor knowingly failed to address a treating provider's deficient care, thereby interfering with the plaintiff's medical treatment. *Id*.

To bring a § 1983 claim against a local governmental entity or a private entity performing a government function—such as Centurion—a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities performing a government function). Under *Monell*, the requisite elements of a § 1983 claim against such an entity are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional

right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, prisoners must plausibly allege that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978,

985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

The Eighth Amendment includes the right to adequate medical treatment in prison. Prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts with deliberate indifference "only if the [prison official or provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted). Medical malpractice or negligence does not support a cause of action under the Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm, *McGuckin*, 974 F.2d at 1060.

Additionally, there is no constitutional right to an outside medical provider of one's own choice. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution.").

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. Moreover, even prison officials or medical providers who *did* know of a substantial risk to an inmate's health will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

Plaintiff's Complaint, liberally construed, appears to state a colorable § 1983 claim against some of the Defendants. For the reasons that follow, Plaintiff may proceed on his Eighth Amendment medical care claims against Defendants Centurion, Garcia, and Seigert.

### B.    Claims against Centurion

Plaintiff alleges that numerous unidentified medical personnel failed, on multiple occasions, to ensure that Plaintiff's medication was refilled in a timely manner. Plaintiff sent refill requests ahead of time but still did not receive them. As a result, Plaintiff had to go without his medication for 66 days over eight different periods of time. The alleged consistent failure of medical staff to respond to Plaintiff's multiple refill requests gives rise to a plausible inference that Centurion has a custom or practice of failing to timely refill inmates' prescribed medication.

In addition, Plaintiff's allegation that numerous nurses refused to single-dose him off the pill cart 198 different times gives rise to an inference that Centurion had a policy or custom regarding single-dosing. That multiple providers knew Plaintiff was consistently not getting his refills and still refused to single-dose Plaintiff—even though the medication was available on the pill cart—plausibly suggests that this policy or custom amounted to deliberate indifference to Plaintiff's serious medical needs. Therefore, Plaintiff may proceed on these two policy- or custom-based claims against Centurion.

### C.     Claims against the Named Individual Defendants

Plaintiff may proceed against Defendant Garcia, based on his allegation that Garcia refused to take Plaintiff to his medical appointment and then lied about it. Plaintiff's Eighth Amendment claims against Defendant Siegert are also plausible, given his allegations that she was informed multiple times about the consistent problems with timely medication refills and single-dosing, yet did not take action to correct those problems.

However, Plaintiff may not proceed against Defendants Grace and Reidy on the current allegations. The body of the Complaint does not contain any specific allegations against these Defendants at all—instead, Plaintiff states merely that they "were personally involved in the conduct complained of herein" and were charged "with the responsibility to see to it that the inmates … receive [their] prescribed prescription medication and refils [sic] on time." *Compl.* at 6. These vague and conclusory statements are insufficient to support a reasonable inference that Defendants Grace and Reidy acted with deliberate indifference or that their actions caused Plaintiff's injury. *See Iqbal*, 556 U.S. at 678. Thus, Plaintiff's claims against Grace and Reidy will be dismissed.

### D.     Claims against the IDOC

Plaintiff's claims against the IDOC are implausible because the IDOC, as a state entity, is not considered a "person" subject to suit under § 1983. *Will v. Mich.*

INITIAL REVIEW ORDER BY SCREENING JUDGE - 14

*Dep't of State Police*, 491 U.S. 58, 71 (1989). And, even if the IDOC were a "person," it would be immune from suit in federal court under the Eleventh Amendment. *See Hans v. Louisiana*, 134 U.S. 1, 16–18 (1890); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Quern v. Jordan*, 440 U.S. 332, 342–44 (1979) (section 1983 does not waive state sovereign immunity). *Esquibel v. Idaho*, No. 1:11-cv-00606-BLW, 2012 WL 1410105, at *6 (D. Idaho Apr. 23, 2012) (the State of Idaho has not waived state sovereign immunity for constitutional claims). Therefore, the Court will dismiss Plaintiff's claims against the IDOC.

### E.    *Claims against Doe Defendants*

Plaintiff attempts to name six unidentified nurses as Jane and John Doe defendants. Though the use of "Doe" to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If the true identity of any of the Doe Defendants comes to light during discovery, Plaintiff may move to amend his Complaint to assert claims against those Defendants.

### CONCLUSION

Plaintiff may proceed as outlined above. This Order does not guarantee that Plaintiff's claims will be successful. Rather, it merely finds that some are

plausible—that is, the claims will not be summarily dismissed at this time but will proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendants may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion.[3] Because (1) prisoner filings must be afforded a liberal construction, (2) governmental officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by governmental records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting procedural defenses such as non-exhaustion or entitlement to qualified immunity.

Plaintiff will be responsible for serving a summons and the Complaint upon Defendants by formal service of process or by obtaining signed waivers of service of summons from each Defendant or their counsel. Plaintiff must do so within 90 days. If he does not, his claims against unserved Defendants will be dismissed without prejudice, after notice to Plaintiff. *See* Fed. R. Civ. P. 4(m).

---

[3] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under § 1915A. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to § 1915A and may be filed only in extraordinary circumstances.

# ORDER

**IT IS ORDERED:**

1.  Plaintiff may proceed on his Eighth Amendment medical treatment claims, as set forth above, against Defendants Centurion, Garcia, and Siegert. All other claims against all other Defendants are DISMISSED, and Defendants IDOC, Grace, and Reidy are TERMINATED as parties to this action. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to amend the complaint to assert such claims.[4]

2.  This Order serves as formal notice that Plaintiff must complete one of the two following actions, as to each Defendant, within 90 days:

    a.  <u>Formal Service of Process</u>:

        i.  To obtain a summons from the Clerk of Court, Plaintiff must file a "Request for Issuance of Summonses," which

---

[4] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

must provide the names and service addresses of each

Defendant to the Clerk of Court. Thereafter, the Clerk of

Court will prepare and issue the summonses and provide

them to Plaintiff for service.

ii.　Plaintiff must serve a summons and a copy of the

complaint upon each Defendant by formal service of

process, *see* Federal Rule of Civil Procedure 4(c). Each

type of Defendant must be served in the specific manner

specified in the subsection of Rule 4 that applies to the

particular defendant; for example, the rules for serving

individuals are different for the rules for serving entities.

*See* Fed. R. Civ. P. 4(e) through (j). Simply mailing the

complaint to the defendants or their lawyers is not

sufficient service of process.

iii.　If Plaintiff chooses to use formal service of process, it

must be accomplished pursuant to Rule 4(c), including by

a person qualified according to Rule 4(c)(2).

iv.　Immediately after service, the person serving the

summons and complaint must file a "Return of Service"

with the Clerk of Court to show the date, time, manner of

service, and person upon whom the documents were

served. If this document is not filed during or

immediately after the 90-day service deadline, the

complaint will be dismissed without prejudice.

b.  <u>Waiver of Service of Summons</u>:

i.  Alternatively, Plaintiff can obtain "Waiver of Service of

Summons" forms from the Clerk of Court.

ii.  Plaintiff can prepare and send to each Defendant (not

their attorney) a completed waiver form, following Rule

4(d). Plaintiff must enter the date the waiver is being sent

to the Defendant on each form before sending the waiver.

The Defendant then has 60 days from the date entered on

the form to sign and file the waiver if they choose to

waive service. Defendants are not required to waive

service.

iii.  Plaintiff must send out the waivers of service exactly as

specified in Rule 4(d).

iv.  If a defendant chooses to waive service, then the

defendant will file the waiver of service of summons with

the Clerk of Court, and the defendant is obligated to file

INITIAL REVIEW ORDER BY SCREENING JUDGE - 19

an answer or permissible pre-answer motion, or the

defendant may be subject to entry of default.

v.     If a defendant does not agree to waive service and does

not file the waiver of service within the deadline, then the

Plaintiff must use formal service of process (see above)

to serve each Defendant according to Rule 4 within 90

days after issuance of this Order. If Plaintiff needs an

extension of time to accomplish formal service of process

after defendants fail to return waivers of service, then

Plaintiff must file a "Motion for Extension of Time for

Service under Rule 4(m)."

3.     If Plaintiff does not accomplish formal service of process or ensure

that a signed waiver of service of summons for each defendant has

been filed by the defendant within 90 days after issuance of this

Order, all claims against any unserved Defendants will be subject to

dismissal without prejudice, with or without additional notice to

Plaintiff. *See* Fed. R. Civ. P. 4(m).

4.     After Defendants appear, the Court will issue an order governing the

pretrial schedule, including disclosure and discovery in this case. *See*

General Order 343, *In Re: Adoption of a Standard Disclosure and*

*Discovery Order for Pro Se Prisoner Civil Rights Cases* (Feb. 8, 2019).

5.      Plaintiff's Motion to Take Judicial Notice (Dkt. 5) is DENIED. The allegations in that Motion are not the type of facts properly subject to judicial notice. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

6.      Pursuant to General Order 324, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: September 8, 2022

B. Lynn Winmill
U.S. District Court Judge