UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL T. HAYES,<br><br>                    Plaintiff,<br><br>v.<br><br>IDOC; RONA SIEGERT; CPL.<br>GARCIA; CENTURION MEDICAL;<br>MICHAEL GRACE; TONJA REIDY;<br>and JANE AND JOHN DOE NURSES,<br>1-6,<br><br>                    Defendants. | Case No. 1:22-cv-00184-DCN<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

Plaintiff, a prisoner in the custody of the Idaho Department of Correction ("IDOC"), is proceeding pro se in this civil rights matter. The only remaining Defendants in this action are IDOC Health Services Director Rona Siegert and Correctional Officer Corporal Steven Garcia. Both Defendants and Plaintiff have filed Motions for Summary Judgment, and Plaintiff has also filed a Motion to Amend along with a proposed amended complaint.

The parties have filed their respective briefing, and all three Motions are ripe for the Court's consideration. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. *See* D. Idaho Loc. Civ. R. 7.1(d). Accordingly, and for the reasons that follow, the Court will (1) deny Plaintiff's Motion to Amend and Motion for Summary Judgment, and (2) grant Defendants Siegert's and Garcia's Motions for Summary Judgment.

MEMORANDUM DECISION AND ORDER - 1

## BACKGROUND

The Court has permitted Plaintiff to proceed on Eighth Amendment claims of inadequate medical treatment against Defendants Siegert and Garcia. *See Initial Review Order*, Dkt. 6, at 17. Though Plaintiff was also initially allowed to proceed against Centurion—the private entity providing Idaho inmates with medical care under contract with the IDOC—all claims against Centurion were later dismissed for lack of service. *See* Dkt. 40.

Defendants Siegert and Garcia now seek summary judgment. Plaintiff has also moved for summary judgment, as well as for leave to amend the Complaint. The Court will first address Plaintiff's Motion to Amend and will then analyze the parties' respective Motions for Summary Judgment.

## PLAINTIFF'S MOTION TO AMEND

Pursuant to the Court's Case Management Order, all amendments to pleadings were due no later than September 4, 2023.[1] *See* Dkt. 41. Plaintiff's Motion to Amend and proposed amendment, however, were not filed until March 18, 2024 (at the earliest[2])— over six months late. Therefore, Plaintiff's request for amendment is governed not by the liberal provisions of Federal Rule of Civil Procedure 15(a), but instead by the more restrictive provisions of Rule 16(b). Under that rule, the pretrial "schedule may be modified

---

[1] The April 6, 2023 Case Management Order set the amendment deadline at 150 days later. That date was Sunday, September 3, 2023. Under Rule 6(a)(1)(C) of the Federal Rule of Civil Procedure, then, amendments were due the next business day—Monday, September 4, 2023.

[2] Prisoners are usually entitled to the benefit of the "mailbox rule," which provides that a legal document is deemed filed on the date the prisoner delivers it to the prison authorities for filing by mail, rather than the date the clerk actually receives it. *See Houston v. Lack*, 487 U.S. 266, 270–71 (1988); *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009) (applying the mailbox rule to civil rights actions).

only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

The focus of the good cause analysis is on "the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Thus, the issue under Rule 16(b) is whether the "pretrial schedule ... cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (quoting Fed. R. Civ. P. advisory committee's notes (1983 amendment)) (internal quotation marks omitted). "If that party was not diligent, the inquiry should end." *Id.*

Plaintiff has not established good cause to permit late amendment. Plaintiff's Motion to Amend contains no justification for his delay in seeking amendment. *See* Dkt. 67. In his reply in support of the Motion, Plaintiff contends that Defendant Siegert did not comply with discovery requests. Dkt. 76 at 3–4. However, the discovery deadline has passed without Plaintiff having filed a properly supported motion to compel.[3] Therefore, the Court cannot credit Plaintiff's most recent accusations regarding alleged discovery violations.

Because Plaintiff has not shown he was diligent in seeking to comply with the Case Management Order, he has not established good cause to amend the Complaint at this late stage. Accordingly, the Court will deny Plaintiff's Motion to Amend.

## MOTIONS FOR SUMMARY JUDGMENT

The Court now considers whether any party is entitled to summary judgment.

---

[3] The Court denied Plaintiff's earlier motion to compel because it did not include the good-faith certification required by Federal Rule of Civil Procedure 37(a)(1) and Local Civil Rule 37.1. *See* Dkt. 61 at 4. Alternatively, the Court found the motion to compel moot because, after the motion was filed, Siegert provided the requested discovery. *Id.* at 4–5.

1.      **Standard of Law Governing Summary Judgment**

Summary judgment is appropriate where a party can show that, as to any claim or

defense, "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the

summary judgment rule "is to isolate and dispose of factually unsupported claims or

defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is not "a disfavored

procedural shortcut," but is instead the "principal tool[] by which factually insufficient

claims or defenses [can] be isolated and prevented from going to trial with the attendant

unwarranted consumption of public and private resources." *Id*. at 327.

In resolving a summary judgment motion, the Court must consider the facts in the

light most favorable to the non-moving party, unless the non-moving party's version of the

facts is "blatantly contradicted by the record[] so that no reasonable jury could believe it."

*Scott v. Harris*, 550 U.S. 372, 380 (2007). If such a blatant contradiction exists, then there

is no "genuine" dispute as to that fact. *Id*.

The moving party bears the initial burden to show that each material fact cannot be

disputed. Material facts are those "that might affect the outcome of the suit." *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Disputes over irrelevant or unnecessary

facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec.

Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

To show that the material facts are not in dispute, the moving party may cite to

particular parts of materials in the record or show that the adverse party is unable to produce

admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must

consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." *Anderson*, 477 U.S. at 247–48. Rather, a case will survive summary judgment only if there is a *genuine* dispute as to a *material* fact. *Id.*

If the moving party meets this initial responsibility, the burden then shifts to the non-moving party to establish that a genuine dispute as to any material fact does indeed exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Instead, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Rather, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court must grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

Where, as here, the parties submit cross-motions for summary judgment, "each

motion must be considered on its own merits." *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotation marks and alteration omitted). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

Statements in a brief, unsupported by the record, cannot be used to create a dispute of fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). On the other hand, a verified complaint by a pro se prisoner "may be treated as an affidavit to oppose summary judgment," but only "to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'" *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998) (quoting *McElyea v. Babbitt,* 833 F.2d 196, 197–98 & n. 1 (9th Cir. 1987)).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Though all reasonable inferences that can be drawn from the evidence must be drawn in the light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630–31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

In cases involving pro se inmates like Plaintiff, courts liberally construe the pleadings and briefs and "should avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). However, although pro se inmates are exempted "from *strict* compliance with the summary judgment rules," they are not exempted "from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018). In opposing a motion for summary judgment, a pro se inmate must submit at least "some

competent evidence," such as a "declaration, affidavit, [or] authenticated document," to support his allegations or to dispute the moving party's allegations. *Id.* at 872, 873 (upholding grant of summary judgment against pro se inmate because the "only statements supporting [plaintiff's] ... argument are in his unsworn district court responses to the defendants' motion for summary judgment and to the district court's show-cause order").

## 2.   Factual Background

This section includes facts that are undisputed and material to the resolution of the issues in this case. Where material facts are in dispute, the Court will note those disputes and—when considering each cross-motion for summary judgment—will adopt the version of the facts set forth by the non-moving party, insofar as that version is not contradicted by clear documentary evidence in the record. *See Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Plaintiff alleges that, from October 13, 2021, to March 31, 2022, his prescription medication for his diabetes ran out, and was not timely refilled by Centurion medical staff, eight separate times. *Compl.*, Dkt. 1, at 10. As a result, even though Plaintiff submitted timely requests for refills, he was forced to go without his prescription medication for a total of 66 days.

To try to get his medication on each of these 66 days, Plaintiff alleges that, whenever the Centurion nurses came by his cell with the pill cart, he asked to be "single dosed." *Id.* at 10–11. "Single dosing" occurs when an inmate's regular prescription medication has not

MEMORANDUM DECISION AND ORDER - 7

been timely refilled, but the pill cart has the medication available so that the nurse dispenses a single dose to the inmate, as a stop-gap measure while the inmate is waiting for the refill. *See id*. at 10–11. On each of these 198 occasions—three times per day for the 66 days in total Plaintiff went without his medication—the Centurion pill cart nurse refused provide Plaintiff with a dose of his medication.

Plaintiff informed Defendant Siegert about these problems through the grievance process. Though it initially appeared from the Complaint that Siegert was responsible for the supervision of prisoners' medical treatment, Siegert has since submitted uncontroverted evidence that her only roles with the IDOC are (1) as the IDOC official who "oversee[s] the IDOC audits and contract monitoring of the third-party medical care provider," Centurion, and (2) as the Level Three appellate authority who reviews inmate grievance appeals regarding their medical treatment. *Decl. of Rona Siegert*, Dkt. 58-3, ¶ 5. At times, Siegert also reviews inmate concern forms regarding their medical treatment—the first step in the grievance process rather than the third—but if the concern form raises an issue beyond her authority, Siegert forwards the concern form to medical personnel involved with the inmate's medical care. *Id*. ¶ 12.

Siegert is not a medical provider. *Id*. She does not "direct the provision of medical care at the IDOC facilities," she does not "have direct oversight of any medical care providers at the facilities," and she does not "provide any type of medical care to inmates." *Id*. ¶ 4. She cannot prescribe or otherwise provide medication to inmates. *Id*.

As the appellate authority in the medical-care grievance process, Siegert reviews inmates' grievances, and other staff members' responses to those grievances, to determine

if the inmates' issue has been resolved. If an inmate's concern has not already been addressed, Siegert "will follow up with the appropriate medical staff or administration regarding the inmate's concerns or issues to make sure they are aware of the inmate's concern." *Id*. ¶ 13. Siegert has no authority "to make medical decisions for inmates' care" or "to override or change the medical decisions of licensed medical providers, nurses, or staff." *Id*.

In November 2021, Plaintiff submitted a grievance that he was not being provided with medication refills in a timely manner. *Ex. B to Siegert Decl*., Dkt. 58-6 at 2 (stating that Centurion "ran [Plaintiff] out" of his medication on several occasions). The initial medical provider to respond noted that this delay was "likely related to … losing our pharmacy manager who was responsible for the management of … medication…. [T]hese responsibilities have been allocated to other full-time medical staff." *Id*.

The second medical provider to respond stated that Centurion had "transitioned" medication responsibilities to nursing staff and that Plaintiff had "been receiving his medications consistently since the transition." *Id*. at 3.

Plaintiff appealed these grievance responses, stating that he was not, in fact, receiving his medication consistently since the transition and that he was not being provided with daily single doses from the pill cart. Defendant Siegert reviewed Plaintiff's medical records and agreed that Plaintiff's medications "were not re-ordered correctly to avoid running out." *Id*. Siegert apologized that Plaintiff had gone without timely medication refills and stated that she had passed on to "Centurion leadership" Plaintiff's concerns about "not being single dosed at pill call." *Id*.

On February 1, 2022, Plaintiff submitted a concern form explaining that he was not provided with a medical refill for three days. *Appx. A to Decl. of Michael Hayes*, Dkt. 70-1, at 4. Siegert received the concern form and responded as follows: "I contacted the [prison] health administrator and asked that your medication be given to you today. I will follow up to ensure that happens." *Id*. Though Plaintiff alleges that Siegert failed to respond to other concern forms during the time period at issue in the Complaint, his documentary evidence in support of this allegation is illegible. *See generally id*.

On March 4, 2022, Plaintiff was scheduled for a medical appointment. Defendant Garcia, a correctional officer, was supposed to escort Plaintiff there. According to Plaintiff, Garcia came to his cell and asked if Plaintiff wanted to go to the appointment, and Plaintiff responded that he did. Plaintiff was awake and the lights were on in his cell. Garcia left and did not take Plaintiff to the appointment. Garcia then allegedly lied to medical personnel and told them that Plaintiff refused to go to the appointment. *Pl. Stmt. of Facts*, Dkt. 69 at 28–29; *Decl. of Michael Hayes*, Dkt. 77-3, ¶¶ 2–3, 10, 15.

Plaintiff's missed appointment was rescheduled for the next month. *See Ex. C to Siegert Decl.*, Dkt. 58-7 at 2–3.

Plaintiff claims that, because of Garcia's failure to take Plaintiff to his appointment, he had to go without his diabetic medication for 30 days. *Hayes Decl.*, Dkt. 77-3, ¶ 3. Plaintiff claims that this caused his "A1C [to] skyrocket[] up to 12.2 which placed [Plaintiff] at high risk for heart attack and stroke"; Garcia's actions also allegedly caused Plaintiff to go "from a type two diabetic to an insulin dependent diabetic." *Id*. ¶¶ 4–5.

Defendant Garcia tells a different story of the March 4, 2022 encounter. Garcia

states that he approached Plaintiff's cell to take Plaintiff to his appointment, but the lights were dark, and Plaintiff was in bed. Garcia claims he asked Plaintiff if he wanted to go to medical but did not hear Plaintiff respond. Garcia believed Plaintiff was sleeping. Garcia returned twenty minutes later, but Plaintiff became abusive. Garcia feared Plaintiff was a safety and security risk. Garcia then asked medical staff if Plaintiff needed to go to his appointment notwithstanding the safety risk. Medical staff supposedly told Garcia that Plaintiff could wait for his next appointment because his medical need was not urgent. *Decl. of Steven Garcia*, Dkt. 59-3, ¶¶ 6–15.

On March 18, 2022, Plaintiff submitted a grievance about the March 4 incident. Two medical providers reviewed Plaintiff's records and spoke to Garcia. These providers concluded from their investigation that Plaintiff had refused Garcia's attempt to take Plaintiff to his appointment. *Ex. C to Siegert Decl.*, Dkt. 58-7 at 2–3. They noted that Plaintiff's March 4 appointment had been rescheduled.

In Plaintiff's appeal of these grievance responses, he stated he did not refuse to go to medical and that Garcia was not telling the truth about what happened. As the appellate grievance authority, Defendant Siegert told Plaintiff that a refusal was documented in his medical records but that the records contained no signed consent to refuse treatment. *Id.* at 3. Siegert noted that Plaintiff had been seen at his rescheduled appointment in April 2022. *Id.*

At no point in the grievance process did any Centurion or IDOC staff member state that Garcia felt Plaintiff was a safety and security risk on March 4 and that this risk was why Garcia did not take Plaintiff to his appointment. Rather, the only reason given for

Plaintiff's missed appointment—until Garcia filed his Motion for Summary Judgment, that is—was that Plaintiff refused to go.

Plaintiff alleges that the 30-day delay in his medication refills caused by Garcia's conduct on March 4, 2022, as well as delays on the other 36 days that he went without timely medication refills, caused his diabetes to suffer and resulted in his becoming insulin-dependent.

### 3.    Standards of Law Applicable to Plaintiff's Claims

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

That is, prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

Defendants who were involved in reviewing claims in an administrative grievance process might or might not be liable for the constitutional violations complained of in those grievances, depending upon (1) the type and timing of problem complained of, and (2) the role of the defendant in the process. For example, an appeals coordinator or grievance appellate authority cannot cause or contribute to a completed constitutional violation, which occurred in the past and which is not remediable by any action the reviewer might take. *See, e.g., George v. Smith*, 507 F.3d 605, 609–610 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

If, however, a defendant reviewing an inmate's grievance knew of "an ongoing constitutional violation and … had the authority and opportunity to prevent the ongoing

violation," yet failed to act to remedy the violation, then the defendant may be held liable under § 1983. *Herrera v. Hall*, 2010 WL 2791586 at *4 (E.D. Cal. July 14, 2010) (unpublished) (citing *Taylor*, 880 F.2d at 1045), *report and recomm'n adopted*, 2010 WL 3430412 (E.D. Cal. Aug. 30, 2010). Where claims are asserted against persons who supervise the provision of prison medical care, the question at summary judgment is not whether the supervisor was "directly involved" in the plaintiff's treatment. *Gonzalez v. Ahmed*, 67 F. Supp. 3d 1145, 1156 (N.D. Cal. 2014). Instead, the question is whether the Complaint plausibly alleges that the plaintiff has provided evidence from which a jury could find that a defendant with the requisite authority knowingly failed to address a treating provider's deficient care, thereby interfering with the plaintiff's medical treatment. *Id*.

Plaintiff brings his § 1983 claims under the Eighth Amendment to the Constitution, which protects prisoners against cruel and unusual punishment and guarantees minimally adequate conditions of confinement. To state a claim under the Eighth Amendment, a prisoner must plausibly allege that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th

Cir. 2014) (en banc).

The Eighth Amendment includes the right to adequate medical treatment in prison. Prison officials can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, … [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts with deliberate indifference "only if the [prison official or provider] knows of and disregards an excessive risk to inmate health

and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. Moreover, even prison officials who *did* know of a substantial risk to an inmate's health will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. If prison officials have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that official had "subjective knowledge and conscious disregard of a substantial risk of serious injury," summary judgment in favor of the prison officials is appropriate. *Toguchi*, 391 F.3d at 1061.

The deliberate indifference analysis focuses on a defendant's intent. Therefore, a defendant who does not have full control over the circumstances of which the plaintiff complains cannot be said to act with deliberate indifference if that defendant "accomplish[ed] what could be accomplished within the limits of his authority." *Williams v. Bennett*, 689 F.2d 1370, 1387–88 (11th Cir. 1982). Personal liability under § 1983 "cannot be based on prison conditions beyond the control of a defendant." *Pinto v. Nettleship*, 737 F.2d 130, 133 (1st Cir. 1984).

MEMORANDUM DECISION AND ORDER - 16

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted). That is, a delay in medical treatment can violate an inmate's right to adequate prison medical care. However, an inmate asserting an Eighth Amendment violation must establish that the delay in treatment actually caused further harm. *McGuckin*, 974 F.2d at 1060.

## 4.     Plaintiff's Motion for Summary Judgment

Though Plaintiff may have intended to seek summary judgment against both Defendants Siegert and Garcia, his Memorandum in Support of the Motion complains only of Garcia's conduct. Nonetheless, regardless of whether Plaintiff can be deemed to have sought summary judgment against Siegert as well, the Court concludes Plaintiff is not entitled to summary judgment against either Defendant.

Plaintiff would bear the burden of proof at trial. Therefore, as the party moving for summary judgment, Plaintiff "must come forward with evidence which would entitle [him] to a directed verdict if the evidence went uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (internal quotation marks omitted). That is, Plaintiff's initial burden on summary judgment is to establish every element of his Eighth Amendment claim. This Plaintiff cannot do.

Plaintiff, a diabetic, has sufficiently established that he has an objective, serious medical need. However, even if Plaintiff could establish that Defendants acted with deliberate indifference to that serious medical need, Plaintiff has not met his burden of

showing that Defendants' actions actually caused the injury of which Plaintiff complains.

Plaintiff complains of delays in receiving his diabetic medication for a total of 66 days, which includes a single period of 30 days after the March 4, 2022 incident with Defendant Garcia. *See Hayes Decl.*, Dkt. 77-3, ¶ 3 ("Because of Garcia's refusal to allow … [Plaintiff] to go to the medical appointment [Plaintiff] had to go without his diabetes medication for 30 days."). As explained above, a delay in medical treatment does not violate the Eighth Amendment if the delay does not cause further harm. *McGuckin*, 974 F.2d at 1060.

Though Plaintiff himself may believe that the delays in his medication refills resulted in a worsening of his medical condition—becoming an insulin-dependent diabetic—there is no medical testimony from a qualified expert that any of the delays actually caused this injury. Because Plaintiff is not medically trained, he is not qualified to so opine. It was Plaintiff's responsibility to come forward with evidence supporting a jury finding of causation. Because Plaintiff has not done so, he has failed his initial burden of production with respect to causation, and his Motion for Summary Judgment must be denied.

**5.      Defendant Garcia's Motion for Summary Judgment**

In Defendant Garcia's Motion for Summary Judgment, Garcia argues that (1) he did not act with deliberate indifference, and (2) Plaintiff cannot establish causation. Taking the evidence in the light most favorable to Plaintiff—that Garcia failed to take Plaintiff to his March 4, 2022 medical appointment and then lied to medical staff by saying Plaintiff refused to go—a reasonable factfinder could conclude that Garcia acted with deliberate

indifference. However, Garcia is still entitled to summary judgment because, as explained above with respect to Plaintiff's Motion for Summary Judgment, Plaintiff cannot establish that Garcia's conduct caused Plaintiff harm.

As the party who would not bear the burden of proof at trial, Garcia may meet his initial burden on summary judgment simply by "pointing out to the district court[] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. Garcia has met this burden by pointing out that Plaintiff has not submitted any medical evidence that the 30-day delay in receiving his medication after the March 4 incident caused Plaintiff's diabetes to deteriorate.

Because Garcia "has produced enough evidence to require the plaintiff to go beyond his … pleadings," the burden shifts to Plaintiff to show that a genuine dispute of material fact as to causation actually exists. *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004). If Plaintiff fails to produce evidence, or if the evidence produced is insufficient, the Court "is not required (or even allowed) to assume the truth of [the] challenged allegations in the complaint." *Id*.

Plaintiff has not met his burden of establishing a genuine dispute of material fact as to the causation element of his Eighth Amendment claim. Plaintiff acknowledges that Garcia's alleged refusal to take Plaintiff to his medical appointment in March 2022 caused, at most, a delay of 30 days in refilling Plaintiff's medication. *Hayes Decl.*, Dkt. 77-3, ¶ 3. Plaintiff has not submitted any qualified medical testimony that this 30-day delay caused Plaintiff to become insulin-dependent or caused his health otherwise to suffer. As a result, Defendant Garcia is entitled to summary judgment.

MEMORANDUM DECISION AND ORDER - 19

6.      **Defendant Siegert's Motion for Summary Judgment**

In Defendant Siegert's Motion for Summary Judgment, Siegert contends she is not liable under § 1983 because Plaintiff cannot show she acted with deliberate indifference to Plaintiff's serious medical needs. The Court agrees.

Siegert has submitted evidence that she is not a medical provider and that she does not have authority to prescribe medication or otherwise to treat any medical condition of any inmate. Thus, Siegert had no ability to order the refills of Plaintiff's medication. As explained earlier, a defendant "cannot be based on prison conditions beyond the control of a defendant." *Pinto*, 737 F.2d at 133.

The evidence in the record establishes that Siegert did, in fact, bring Plaintiff's concerns to Centurion medical providers, which was all she had the power to do. That is, Siegert has met her initial burden of showing that she "accomplish[ed] what could be accomplished within the limits of [her] authority" and, therefore, that she was not deliberately indifferent to Plaintiff's serious medical need. *See Williams*, 689 F.2d at 1387–88. Siegert "responded reasonably to the risk" of delayed medication refills by doing everything that was within her control. *See Farmer*, 811 U.S. at 844–85. Siegert has initially shown that anything else was beyond her authority but, rather, was entirely within Centurion's control.

The burden thus shifts to Plaintiff to produce evidence that Siegert actually did have the authority to order timely refills of his medication or that she had power to do anything other than what she did—bring Plaintiff's concerns to Centurion staff. Plaintiff has failed to do so.

Plaintiff's subjective belief that Siegert had the authority to order his medication refills in a timely manner is insufficient to contradict her sworn statement—based on her personal knowledge of her own job position—that she is not a medical provider and has no power to prescribe or order medication or otherwise to treat an inmate's medical needs. Plaintiff has failed to establish a genuine dispute of material fact as to the subjective prong of his Eighth Amendment claim against Siegert. Therefore, Defendant Siegert is entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend and Motion for Summary Judgment will be denied, and Defendants' Motions for Summary Judgment will be granted.

## ORDER

**IT IS ORDERED:**

1.      Plaintiff's Motion to Amend (Dkt. 67) is DENIED.

2.      Plaintiff's Motion for Summary Judgment (Dkt. 77) is DENIED.

3.      Defendants' Motions for Summary Judgment (Dkt. 58 and 59) are GRANTED, and this entire action is DISMISSED with prejudice.

DATED: November 13, 2024

David C. Nye
Chief U.S. District Court Judge